Good morning. Lee Tucker of the Federal Defenders for Hector Reina-Rodriguez. I would like to reserve three minutes for rebuttal. Judges Fletcher, Thomas, and Gertner, may it please the Court. Mr. Reina is serving an unlawful sentence, and we ask this Court to vacate that sentence and remand it for appropriate further proceedings. This Court has twice before discussed this review when the decision was unfavorable to Mr. Reina, and then in Grissel when this Court en banc expressly overruled that earlier ruling. At all times in this case, beginning with plea negotiations, through pre-sentence litigation, through sentencing and all of the various post-conviction proceedings since then, the District Court has always been, and remains, that the 16-level enhancement does not apply, because the Utah statute under which he was convicted is overbroad because of the nature of the structure, missing an element because of the issue of unprivileged    Let's assume we agree with you. The government argues that the transcript of the initial plea hearing essentially makes this harmless error, or at least in some senses it would be makes it futile to remand to the District Court for the application of a modified categorical approach. How do you respond to that? Well, Your Honor, two things. First of all, it's our contention that this Court should not move to the modified categorical approach at all under the reasoning of Johnson, Shepard, Taylor, and Navarro-Lopez. Assuming for the sake of argument that you choose to proceed in that direction, we strenuously urge that it would be inappropriate under these circumstances for the transcript of that change of plea from 2000 to be introduced at this very late stage in the proceedings. Now, let's say we agree with you at this – at that point, and we carry this out and we remand to the District Court. Aren't we – isn't that a futile exercise? I mean, the transcript's going to come in then on resentencing. Well, I disagree, Your Honor, that it would necessarily come in under Matthews, and the government refers to Matthews in its brief. What Matthews contemplates is a situation where the parties had no prior reason to be on notice that they should prepare and litigate that particular issue. That is why this Court on Bonk said we will generally allow – we will generally remand on an open record. However, I would direct the Court to the panel decision in Matthews authored by Judge Fletcher, which, although reversed on Bonk, was not in any problem in the reasoning to which I would direct you, which is that where a party has had notice and has no excuse for failing to develop the record sufficiently, where the party has the burden of production and persuasion, as the government did here, there is no reason why it should be given a second bite at the apple. First of all, the plea colloquy that we're talking about is the Utah State plea colloquy, right? Yes, Your Honor. And you're saying that no one made any effort to introduce that colloquy below. That's correct, Your Honor. And that – and your answer to Judge Thomas's position about futility, if we were to remand it now under the categorical approach, the government would move to enlarge the record to include the Utah State plea colloquy, and doesn't that establish that this was a dwelling within the meaning of the Federal guidelines? Why isn't that – you're saying that that should be barred because of the late stage of these proceedings? Indeed, Your Honor. We have now had six years of litigation in this case under which the parties in every court to consider this have been looking at two documents produced by the defendant in this case, the information, the complaint, and the judgment of conviction. It would be an extreme waste of judicial resources. It would be unfair to the parties to now allow the government to expand the record in this way. Mr. — But that is what routinely happens. And I'm not saying we would take that action necessarily. I'm just trying to play this out. Let's say that we remanded. Okay. Thank you. Let's say we – I guess what I'm really getting to is this, and maybe you can answer this. Let's say we – if we were to remand on an open record, have a resentencing, and the transcript comes in, do you have a defense for it? Absolutely, Your Honor. And forgive me for being so entrenched in my outrage. No, absolutely. Even if this change of plea transcript comes in, Mr. Rayner Rodriguez absolutely should still prevail, because it – you know, it's ironic, actually. We're arguing this really based on the principle rather than the fact that to bring it in damages Mr. Rayner Rodriguez's position here. The plea transcript adds nothing to the issue that the court would have to determine, and that is whether or not Mr. Rayner pleaded guilty to a – pleaded guilty to an offense that matches the Taylor categorical burglary of a dwelling. But even if the Utah statute is overbroad, because it includes categories that are not under the Federal statute, in the plea colloquy, he admits that they went to the victim's place, walked in. In other words, the plea colloquy makes it clear it was a dwelling. Well, Your Honor, indeed. But in Utah, a dwelling can encompass structures that under Federal law do not constitute a dwelling for purposes of a burglary conviction, structures adapted for overnight use. It's overbroad. So it includes Category A, which is a guideline dwelling, and Category B, which is not. Right. And he then says, oh, it was A. No, he doesn't. That is – Do you interpret that colloquy to suggest that he's admitting that it was a dwelling? Well, the issue was never before the Court. He was never asked to plead or admit as to facts as to the nature of the dwelling. It could have been – But just to interrupt, so we're talking about the same thing. His counsel says, describes the offense, or maybe it's the government, I can't tell, they went to the victim's place, walked in, allegedly found a knife in the residence, didn't take one with them, held the guy off with a knife and took some of his things. That's basically what happened. He says, Mr. Rodriguez, is that what happened? Mr. Rodriguez, yeah, Your Honor, but see, this guy with some jewelry, you know, necklaces and stuff, and it was taken to a different place, and this is where the aggravated burglary came from. Your Honor, Your Honors, both the Court, if I may, and the government are imputing too much significance to the word residence. There's nothing there to establish that it is not an RV, that it's not an adapted other kind of dwelling. Simply put, it would be unfair at this point to enhance Mr. Reyna for facts that he did not admit to. Precisely because it's adapted for overnight use, it may have a kitchen, as he indicates here, and so on, that does not sufficiently narrow it. It could still be an RV. It could be a modified cargo container. It could be a really nice tent with four rooms. But just also bring us up to date as to where Mr. Reyna Rodriguez is. Isn't he about to be released? Your Honor, Mr. Reyna is on supervised release. On supervised release, and that's about to run out. It will run out in July, which is one reason why we abandoned our wait for the en banc decision in Aguila Montes de Oca.  But to all intents and purposes, he's served his sentence. Your Honor, the Ninth Circuit has always held that as long as an appellant remains on supervised release or a petitioner remains on supervised release, the case is not moved. Judge Fletcher, do you have any questions? No, but it seems to me that perhaps the cleanest disposition is just to hold off and the case will become moved in July. It seems to me that then the case is all over, nothing further is needed. It may be the cleanest from the court's perspective and the government's perspective, but from the perspective of Mr. Reyna, it would work a great injustice. He has right now an illegal sentence, and that will continue to haunt him whether or not he becomes eligible for any kind of future relief in the future. And enhanced offense of this nature on his record is absolutely prejudicial. Thank you, counsel. We will give you some time for rebuttal.  We'll hear from the government. May it please the Court, I'm Elizabeth Strange from the U.S. Attorney's Office in Tucson, and I represent the United States. As the Court is aware, the government believes that this Court should not even review this matter because it's results not retroactively applied to this case, and these issues were addressed on direct appeal. But I'd first like to turn to the government's request under Federal Rule 201 that you do take judicial notice of the plea transcript. Well, it would be a little bit unusual for us to take in essentially new evidence and decide for ourselves what the district court ought to be doing in the first instance, don't you think? No, Your Honor. Rule 201 contemplates that evidence may be introduced at any level, including the appellate level. This Court has done this before in the United States v. San Guino, and the request falls squarely within the rule. It's a State transcript. In other words, it's one thing to say that portions of the record below are part of this proceeding. This is the proceeding now of a State court, and you're saying we should address that at this level? The plea colloquy that we've been talking about is the State plea colloquy. Yes, it is. And, yes, I am saying that this Court should take judicial notice of that. The ---- for several reasons. One, it's not unfair, contrary to what the Petitioner has said. This is truthful information. It's a certified transcript. There's been no question made by the Petitioner about its authenticity. It's information, factual information about which the Petitioner knew. The Petitioner knew what he pled guilty to. He knew he pled guilty going to the victim's place, his residence. He picked up a knife there. He held the victim off and took what he said was necklaces and stuff. So the ---- it's truthful information. The Petitioner was aware of it. It will not undermine the district court's fact-finding role. In fact, this is additional information that supports what the district court had found. The district court did its own ---- did both a categorical analysis and a modified analysis and found that this was bruglia of a dwelling. Sotomayor, what did the district court do?  Did the district court do anything else? By looking up the property records himself, that's hardly appropriate. Well, it didn't just ---- excuse me, the district court didn't just simply rest on that in the collateral appeal. He found that based on the two documents that had been presented and relying on the reasoning that was also in the pre-sentence report, that he determined that, in fact, it would have still been a modified analysis. And this information is very relevant, because what had happened in direct appeal is that this Court affirmed it, first doing a modified and then did a categorical analysis, and said, well, this statute fits squarely within Taylor and its bruglia of a dwelling. And so it's that particular holding that was overruled by Grisell. And so on remand, you can't even do a ---- if the Court were to remand this, you can't even do a categorical analysis, because that portion was overruled. Of course. I mean, it would have to be a modified categorical examination. But, I mean, what you're asking us to do is to conduct that on appeal. And you've heard what the likely defense is, that the transcript isn't at all clear as to whether or not it's a ---- it fits within the Taylor approach. In other words, it's certainly a ---- it's someplace where somebody is residing and there might be a kitchen, but it could be ---- it doesn't necessarily have to be a dwelling. I don't agree, Your Honor. The ---- substantially the same facts were found to be bruglia of a dwelling under a modified approach in Guerrero v. Vallequez, 434 Fed 3rd, 1197. Which went through exactly the same kinds of facts that we have here, that the Petitioner Enner remained unlawfully, it was the victim's place, it was located at a street address, he had the intent to commit the felony, he held him off with a knife. So I disagree, Your Honor. I think that the facts provided by the plea colloquy, as well as the judgment and the information, together establish that, in fact, this was bruglia of a dwelling. But you agree that in order to get there, we would have to enlarge the record to include the plea transcript from the State court, which had not been before the district court? Yes, Your Honor. This Court would have to take judicial notice of it, which it has done in similar circumstances. U.S. v. Sanguino, 295 Fed Avex, 175, it was exactly the same situation. There was a document introduced that had not been before the district court. This Court did a modified analysis and found that it satisfied. The Petitioner speaks about judicial economy. To me, it would be more economic for this Court to do the modified review rather than sending it back to the district court, which, as a general rule, it is on an open record. So the government would be allowed to introduce this type of evidence to the district court. The problem, which you've already addressed, is this case is going to be moot in two months. And there's one other point about the fairness issue I'd like to raise. Well, it may or may not be moot. I mean, there are potential immigration consequences and certainly strike issues. That's another matter. Well, Your Honor, but if this case were to come before this Court after July 16th when the term of the term is up for the supervised release, this Court wouldn't hear it. It wouldn't hear it because it is moot. What about the fairness argument raised by your sister, which is that the burden of showing the 16-level increase is clearly the government's burden? It is the government's burden. And the government's failure to put in this evidence when it clearly was accessible, available, and relevant should suggest that we count these proceedings over and the government is lost and the 16-level bump is inappropriate. That's another fairness argument, which is, you know, this was not rocket science to realize that the plea colloquy mattered. Well, in the direct route of this case, it wasn't needed. I don't understand why not, but go ahead. Because the Court, first the district court and then this Court, found that it was sufficient to rely on simply the judgment and the information. And in fact the risk is, you know, especially we've had all sorts of cases in burglary and whether or not it's categorical or not categorical on our circuit. So the fact is, you have to – you rested on the fact it was a categorical approach and that was your risk. No, that's not true, Your Honor. The government rested on both modified and the categorical. But you've conceded here that the information, the charging document and the judgment aren't enough. No. What I said was that the district court said it didn't need anything more. I think this additional information merely affirms the finding of the district court. Well, given that the information and given the charging document and the judgment only refer to the statute, how can you argue that that satisfies a modified categorical approach? Well, I – the district court found that what he'd had before, it sufficed. I know what the district court found. I'm asking you. I think this additional plea colloquy is needed.  Given the ruling of Griselle, yes. But I think – So just to get back to Judge Gertner's point, is that in the first instance, the government could have had or should have had the transcript available, could have introduced it, didn't introduce it, was faced with a burden, elected to rest on a categorical approach, essentially, and took its risk. Well, Your Honor, two things. One, as I've said, the government didn't just simply rest on the categorical. It relied on both. Griselle reversed the categorical. This Court on direct appeal didn't even address the argument that the court shouldn't have looked at the public records on its own, because it found it could do a modified simple answer. Well, it's pretty hard to defend that, isn't it? Well, no, the court – I agree. And I'm not – the government's not defending that. I'm not defending that. I'm just saying that it's a matter of what the district court did here in that respect. Well, that particular aspect, that's the only thing that I'm saying. I think if that had happened to the government, you'd be up here screaming. If they said, well, I've shown this in the street address because I have my law clerks go out and look at the property description on the Internet, you'd be taking that up here in a second. Your Honor, that's not an issue in this case, and I'm not going there. But there is one other issue, as to fairness, that I would like to address, and that is, a year ago, in this very case, the Petitioner sought a 60-day extension file as reply brief because they were seeking – they were getting documents, obtaining documents from the Utah court of conviction. We didn't – the government didn't oppose that, and, you know, apparently they didn't get documents that contradicted the plea colloquy. But that doesn't make this unfair. It doesn't make it unfair to introduce a truth only permission. Well, the unfairness is at two levels. One has to do with whether this was your burden ab initio, and then the other is whether it makes sense for a court of appeals to be doing this. Those are two separate fairness arguments. Should we add to this record? And, gee, shouldn't there be some consequences to the government's failure to have addressed this? May I answer a question, please? Yes, of course. On the direct appeal, this – this document was not – was not important. It didn't – the analysis had been done, and it had been affirmed on that basis. It's merely because of Grisell, which I may remind the Court, it doesn't retroactively apply to this case because it's final. I'm sorry. I can't – I mean, it's hard for me to understand how it doesn't retroactively apply. It's not a rule of criminal procedure, and that's the starting point for fatigue analysis. I mean, we said – the Supreme Court said in Boosley and we said in Hayes v. Brown that the test on whether or not it's substantive or procedural is whether or not it modifies the scope or application of a criminal statute. It's hard to see how this doesn't. Well, it doesn't – Grisell, if I may answer, Your Honor, it is procedural. It is not a substantive change. It didn't change what types of offenses are subject to the enhancement. What it did was change the method in which the Court may determine whether a crime still a crime of violence, still a burglar of dwelling, whether or not it satisfied the categorical analysis. So it is a procedural change, not a substantive change. Okay. And, Judge Fletcher, do you have any questions? No, I don't. All right. Judge Gertner? No. All right. Thank you. Thank you. We'll give you two minutes for rebuttal, total. Thank you, Your Honor. I'd like to make two points as we wrap this up. First of all, this discussion indicates precisely what we want to avoid and what Shepard et al. instruct us to avoid, and that is to engage in a sort of mini-trial. We don't want to go back and be in a position of trying to determine what the structure of the crime was, and that the statute of limitations of the crime, and the statute of limitations of the crime, was now 11 years after the time of the original offense. Second, I would point out that on direct review, this Court implicitly found that under a modified categorical approach, this would not merit a 16-level enhancement. And I say that, if you look at the Wren Rodriguez 1 opinion, the Court struggled with the very – it had to use the categorical approach implicitly. The categorical approach was not easy in that case, because even on direct review, the Court – this Court acknowledged the difficulties of the Utah statute in terms of the privilege issue and in terms of the nature of the dwelling. So that determination is implicitly there at a minimum. And if – I'm happy to entertain questions, but I feel like we've been able to fully flesh this out. Yeah. Any further questions? I'll thank both of you for your arguments in the briefing. It's been very, very helpful. Thank you.
judges: Gertner, Fletcher B. , Thomas